13-4082

## UNITED STATES COURT OF APPEALS

## FOURTH CIRCUIT

### UNITED STATES OF AMERICA,
*Appellee*

v.

### TRENTON JAQUAN RALEY,
*Appellant*

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA,
CHARLOTTE DIVISION,
THE HONORABLE MAX O. COGBURN, JR., PRESIDING**

BRIEF FOR THE APPELLANT

Aaron E. Michel
Attorney at Law
3736 Surry Ridge Court
Charlotte, NC 28210-6921
704-451-8351

Counsel for the Appellant

# TABLE OF CONTENTS

**Page**

**Statement of Jurisdiction** ...................................................................**1**

**Statement of Issues**...............................................................................**1**

**Statement of the Case** ..........................................................................**1**

**Statement of the Facts** .........................................................................**7**

**Summary of Argument**.......................................................................**10**

**Argument – Jurisdiction over this local matter properly belonged exclusively to the local government**..................................................**10**

**Conclusion** ...........................................................................................**14**

**Request for Oral Argument** ..............................................................**14**

**Certificate of Compliance** .................................................................**14**

**Certificate of Service** .........................................................................**15**

**Signature**..............................................................................................**15**

# TABLE OF AUTHORITIES

Page

**CASES**

*Doggett v. United States,* 505 U.S. 647 (1992). ........................................... 11
*Jones v. United States*, 529 U.S. 848 (2000) ................................................. 13
*United States v. Daughtery*, 874 F.2d 213 (4th Cir. 1989)........................... 10
*United States v. Harrington*, 108 F.3d 1460 (D.C.Cir. 1997) .................... 13
*United States v. Lopez*, 514 U.S. 549 (1995)................................................. 13
*United States v. McFarland*, 311 F.3d 376 (5th Cir. 2002)......................... 13
*United States v. Morrison*, 529 U.S. 598 (2000) ......................................... 13


**STATUTES**

18:924 ..................................................................................................... passim
18:1951 ................................................................................................... passim
18:3231 .............................................................................................................1
18:3553 .............................................................................................................3
18:3742 .............................................................................................................1
21:841 ...............................................................................................................1
28:1291 .............................................................................................................1
N.C.G.S. 15A-1021-1024 ........................................................................... 13

**CONSTITUTION**

U.S. Const., Amend. V ........................................................................... passim
U.S. Const., Amend. VI.......................................................................... passim


**RULES AND TREATISES**

U.S.S.G. 5K1.1 ...............................................................................................3

Recent Developments: The Hobbs Act, the Interstate Commerce Clause, and
*United States v. McFarland*: The Irrational Aggregation of Independent
Local Robberies to Sustain Federal Conviction, 76 Tul. L. Rev. 1761 (2001)
.................................................................................................................. 13

Student Note and Comment: Federal Jurisdiction and the Hobbs Act: *United States v. Stillo* and the Depletion of Assets Theory, 72 Chi-Kent L. Rev. 1389 (1997) ................................................................................................ 13

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742.

## STATEMENT OF ISSUES

Whether jurisdiction over this local matter properly belonged exclusively to the local government?

## STATEMENT OF THE CASE

On September 21, 2011, the Charlotte federal grand jury charged by bill of indictment Mr. Raley and two others with robbery and gun charges. (J.A. 8). Counts one through three (§§1951, 922(g), and 924(c)) dealt with the alleged robbery of a Dollar General Store in Monroe, North Carolina, within the Western District of North Carolina by co-defendant Reginald Chambers on October 18, 2010.  (J.A. 8-9). Counts four through seven (§§ 1951, 922(g), and 924(c)) dealt with the alleged robbery of a La Chiquita store in Monroe by all three defendants on October 20, 2010. There was no 922(g) charge against Mr. Raley or co-defendant Polk. (J.A. 9-10).

On September 29, 2011, Mr. Raley appeared before the Federal Magistrate and consented to detention. (J.A. 13). The following day, the standard discovery order and arraignment orders were filed reflecting a plea

1

of not guilty entered at the beginning of the case before the parties had participated in reciprocal discovery. (J.A. 14-19).

On October 20, 2011, Mr. Raley through counsel moved to continue based on the pending arraignment of the third defendant and insufficient time to review and explore plea negotiations, even though the court has already taken a not guilty plea. (J.A. 20). That motion was granted on October 26, 2011. (J.A. 23).

On November 15, 2011, Mr. Raley filed a plea agreement in which he agreed to plead guilty to the robbery in count five and the gun charge in count six. (J.A. 24). The parties agreed that the sentence would be within the guidelines, except for the possibility of a departure for substantial assistance. (J.A. 25). The parties agreed that the defendant would waive his appellate rights, except for ineffective assistance of counsel and prosecutorial misconduct, and that the government retained its appellate rights. (J.A. 27).

On November 29, 2011, Mr. Raley appeared before the Federal Magistrate and entered his guilty plea pursuant to the plea agreement. (J.A. 31-48). Pursuant to the plea agreement, the specific punishment was left blank for the government to fill in and only the statutory maximums were established.

2

On April 13, 2012, six months after Mr. Raley's guilty plea, the probation office completed its draft pre-sentence investigation into the offense and offender and submitted the draft report to the parties for their review. (J.A. 111). The report concluded that the guideline range for the robbery was between 27 and 33 months and the statutory minimum for the gun was seven years. (J.A. 123). Mr. Raley through counsel objected to part of the narrative concerning co-defendant Chambers and Chamber's alleged reason for committing the two robberies, which had no impact on the guideline calculations. (J.A. 126).

On May 7, 2012, the final report was issued and made no changes to the draft report but did agree that the information about co-defendant Chambers "should not affect the defendant's classification." (J.A. 128).

On May 24, 2012, the government filed a motion for downward departure under §5K1.1 and 18:3553(e) based on the substantial assistance provided by Mr. Raley in the investigation and prosecution of co-defendant Chambers. (J.A. 145-8). The government recommended a 30% reduction in the sentence down from a total 111-117 months to 78 months. (J.A. 148).

On October 11, 2012, defense counsel filed a sentencing memorandum and motion for variance. (J.A. 150-8). Defense counsel pointed out the characteristics of the offender that justified a downward

3

variance, particularly, his being only 18 at the time of the crime, his being abused, neglected, and dependent and placed in foster homes, and his efforts at rehabilitation during his lengthy pretrial incarceration. Id.

On October 12, 2012, about five months after the pre-sentence investigation was completed, Mr. Raley moved for substitute counsel because he only had about three weeks notice of the sentencing hearing scheduled for October 25th. (J.A. 50). Defense counsel responded, pointing out that the docket notice of the hearing was filed October 5th, the same date as Mr. Raley's motion. (J.A. 56-58). The District Court denied the motion on October 16, 2012. (J.A. 52). Mr. Raley renewed his motion by letter dated October 17, 2012. (J.A. 54).

On October 25, 2012, Mr. Raley appeared before the District Court for sentencing. (J.A. 69). The District Court stated that an out-of-state attorney had sent a letter asking for defense counsel to move for a continuance for the purpose of allowing the attorney to enter the case. (J.A. 70). The District Court continued the sentencing with Mr. Raley's consent to December 3, 2012, in order to give the attorney the opportunity to enter the case. (J.A. 75).

On January 21, 2013, defense counsel filed an addendum to the sentencing memorandum. (J.A. 159-67). This included a specific sentence

4

requested by Mr. Raley of between 15 and 21 months custodial time followed by probation. (J.A. 160).

On January 23, 2013, Mr. Raley appeared before the District Court for sentencing. (J.A. 79). Mr. Raley confirmed the accuracy of the information provided at the prior proceedings before the Federal Magistrate in which Mr. Raley entered his guilty plea. (J.A. 80-1). Based on Mr. Raley's representations, the District Court affirmed the Federal Magistrate's finding that the plea was knowing and voluntary. (J.A. 81).

Mr. Raley confirmed that he had reviewed the pre-sentence investigation report and understood it. (J.A. 82). Defense counsel indicated that the only pending objection was a request for a minor role adjustment. (J.A. 83). Defense counsel pointed out that co-defendant Polk with more criminal history than Mr. Raley received 51 months imprisonment. (J.A. 84). Defense counsel pointed out that while co-defendant Chambers had engaged in acts of violence while in pretrial custody, Mr. Raley had taken the opposite route and used his pretrial custody time wisely to try and better himself. (J.A. 84).

The government advocated for its proposed 30% reduction in the guidelines for substantial assistance in the prosecution of co-defendant Chambers, resulting in Chamber's guilty plea. (J.A. 86). The government

5

explained that co-defendant Polk also provided substantial assistance and did not actually possess a firearm and so the government allowed him to plead just to the robbery and not the guns. (J.A. 86-7).

Mr. Raley expressed remorse for his involvement in the robbery and hope for redemption. (J.A. 87-8).  He pointed out that he did not have any positive influences on him as a child, but that he was working programs at the jail to make something of himself. (J.A. 88). He quoted Justice Brandeis, "Men are not degraded because they desire to be so. They are degraded largely through circumstances …" (J.A. 90).

The District Court denied self-surrender and a minor role adjustment. (J.A. 91). The District Court granted the 5K1.1 motion. (J.A. 91-2). The District Court found that Mr. Raley was 19 at the time of the crime and had engaged in petty thefts prior to this robbery and this called for significant prison time. (J.A. 92). The District Court departed below the guidelines by 40% from 111 months to 67 months. (J.A. 94). When asked by the probation officer how the 67 months should be allocated between the robbery and the gun charges, the District Court said, "we can write it up in the judgment any way we need to do it." (J.A. 98).

On February 1, 2013, judgment was entered imposing 27 months for the robbery and a consecutive 40 months for the gun. (J.A. 103).

On January 29, 2013, Mr. Raley through counsel filed notice of appeal to the United States Court of Appeals from the final judgment in this matter. (J.A. 109).

## STATEMENT OF THE FACTS

Mr. Raley was born on May 2, 1992, (J.A. 129), to Yoxandra Velascus and Regina Raley. (J.A. 138). Mr. Raley was a child victimized by abuse, neglect, and dependency. (J.A. 138-9). He completed his GED at a local community college at age 17. (J.A. 139).

Aniyah Raley was born three years ago in 2010 to the union of Mr. Raley and a woman about his same age. (J.A. 139). Mr. Raley smoked marijuana daily since the age of twelve and began the daily consumption of cocaine about three years ago when his child was born. (J.A. 139). He studied the bible and participated in parenting classes and reentry classes at the jail during pretrial detention in the instant case. (J.A. 139).

In 2008, at age 16, Mr. Raley was arrested for motor vehicle charges and admitted an improper equipment infraction. (J.A. 134). Shortly thereafter he was arrested for felonious breaking and entering and larceny crimes against the State of North Carolina involving victims Jerry and Jennifer Ricketts in Mr. Raley's home town of Peachland, NC. (J.A. 135). Mr. Raley's probation was revoked and he served 45 days imprisonment due

to testing positive for marijuana and cocaine and monetary non-compliance matters. (J.A. 135). He also admitted a second degree trespass around this same time. Id.

On June 1, 2010, Mr. Raley was arrested for stolen good and larceny and other charges involving the breaking and entering of the home of Lanzy Hamilton in Mr. Raley's home town of Peachland, NC. (J.A. 135-6).

At the age of 18, on October 21, 2010, Mr. Raley was arrested and charged by the State of North Carolina for the robbery that is the subject of the instant offense of conviction. (J.A. 137). These charges were dismissed about one year later when Mr. Raley was passed around from the state government to the federal government. (J.A. 128).

The robbery involved the La Chiquita store in Monroe, North Carolina, on October 20, 2010. (J.A. 131). Co-defendant Chambers entered the store with a small black handgun and Mr. Raley entered with a large chrome revolver. (J.A. 131). The guns were pointed at the two female clerks. Id. Mr. Raley went behind the counter and took a purse belonging to Caila Palacios and began to put money from the cash register into the purse. (J.A. 131). They stole $400. Id.

According to the government, Mr. Raley admitted participation in the robbery and implicated the co-defendants Chambers and Polk and indicated

a willingness to testify. (J.A. 146). The government was able to corroborate the information from Mr. Raley and concluded that he was truthful. Id. According to the government, co-defendant Chambers is a member of a violent gang and Mr. Raley faces the risk of potential retaliation due to his cooperation. (J.A. 147).

Had this case remained with the State of North Carolina, Mr. Raley would have faced a likely prior record level II, Class D, presumptive minimum range of between 59 and 73 months and maximum of 100 months. N.C.G.S. §1340.14-.17. For his cooperation and acceptance of responsibility, the state prosecutor would most likely have offered a mitigated range of a minimum of between 44 and 59, with a maximum of 83 months imprisonment. Id. Under North Carolina sentencing scheme, the defendant starts at the maximum but earns reductions and with recently adopted supervised release privileges could be eligible for supervised release after serving the minimum.

Under the federal sentencing scheme, he was a criminal history category II, offense level 17, plus gun enhancement of seven years (84 months), for a sentence of between 111 and 117 months. (J.A. 140). Due to his assistance, his sentence was reduced to 67 months, in the absolute discretion of the government, where there is no such thing as rules. (J.A.

103). The District Court did not separate out the 67 months into its two components during the sentencing hearing and, instead, these components were not identified until the judgment was published. The one component was 27 months for the robbery and the second component was 40 months for the gun.

## SUMMARY OF ARGUMENT

Jurisdiction over this local matter properly belonged exclusively to the local government.

## ARGUMENT
### Jurisdiction over this local matter properly belonged exclusively to the local government.

A. Standard of Review.

The Court reviews the interpretation of constitutional issues de novo. *United States v. Daughtery*, 874 F.2d 213 (4th Cir. 1989).

B. Discussion

By bringing Mr. Raley in to the federal system for the rest of his life based upon the robbery of a local store of $400, by making this a national matter rather than a local matter, the federal government is depriving Mr. Raley of his constitutional rights to due process, usurping its limited authority under the Commerce Clause and thereby circumventing its constitutional restraints, suffering from attention deficit by focusing on Mr. Raley rather than  those who are seeking to damage our national community

both public and private and thereby wasting taxpayer money on local matters and putting us at risk of a national calamity.

Due process means such things as the right to a speedy trial and even the federal statute on the subject recognizes that this also entails both individual rights and the public's right to a speedy trial. 18 U.S.C. §3161. Mr. Raley was charged the day following the robbery on October 21, 2010, by the local authorities, (J.A. 131), with no help needed or received from the federal authorities. About one year later, on September 21, 2011, the national government swoops in to take over the prosecution, for no particular national purpose other than the claim that it can do what it pleases. (J.A. 130).

As a result, Mr. Raley and the public had this important local matter pending way longer than necessary to administrate justice. It is said that six months delay in prosecution is presumptively prejudicial to the individual. *Doggett v. United States*, 505 U.S. 647 (1992). The takeover of this matter by the national government only served to delay justice and circumvent constitutional restraints on the government.

Guilty pleas in the local system happen promptly, within a few months. The only reason why this matter would have not been resolved by the time the national government took over is because the national

11

government informed the local government of its interest in prosecuting the case.[1] Due process is abandoned by this warehousing of cases by the local government in submission to the arbitrary desires of the national government without regard to a constitutionally defined division of labor among the people's local and national governments. Most importantly there is no basis in fact for any claim that the robbery was of interest to the nation or was anything more than the typical local criminal matter.

The division of labor between our local and national governments is of constitutional dimension and not left to power politics. The Commerce Clause of the United States Constitution exists for a purpose otherwise it would not be there and that purpose is to constraint the national government rather than define a hierarchical authoritarian, socialistic system of government where the local governments get what's left after the national government is satisfied.

> There is no practical justification for the expenditure of federal resources to prosecute local robberies that the states can and traditionally have prosecuted with equal efficacy. Many of these defendants are initially apprehended and processed through the states' criminal justice systems.

> Furthermore, while the structure provided by the federal sentencing guidelines, the lack of parole in the federal system,

---

[1] The other possible explanation, not relevant here, for a delay is the situation where the defendant is asserting his innocence and will probably be having his day in court before a jury within the year.

12

and the nearly automatic additional federal gun count ensure
that many of these defendants serve extremely long sentences in
their entirety, state courts have the authority to impose
sentences of comparable length.

Furthermore, these prosecutions exceed the logical bounds of
the Hobbs Act. The Act requires an actual effect on interstate
commerce, not a potential effect that might possibly happen
sometime in the future when the money stolen might be used
for transactions that might have a miniscule effect on interstate
commerce. Most striking is that often the interstate transactions
that these convictions rely upon for the commerce nexus are not
at all affected by the robberies. (citations omitted).

*Recent Developments: The Hobbs Act, the Interstate Commerce Clause, and*

*United States v. McFarland: The Irrational Aggregation of Independent*

*Local Robberies to Sustain Federal Conviction*, 76 Tul. L. Rev. 1761, 1772-

3 (2001). See also, *United States v. McFarland*, 311 F.3d 376 (5th Cir.

2002)(per curiam with dissenting opinion); *Student Note and Comment:*

*Federal Jurisdiction and the Hobbs Act: United States v. Stillo and the*

*Depletion of Assets Theory*, 72 Chi-Kent L. Rev. 1389 (1997).

It is the duty of this Court to say when the federal government has

gone beyond its jurisdiction. *Jones v. United States*, 529 U.S. 848 (2000);

*United States v. Morrison*, 529 U.S. 598 (2000); *United States v. Lopez*, 514

U.S. 549 (1995); *United States v. Harrington*, 108 F.3d 1460 (D.C.Cir.

1997)(Sentelle, J., dissenting). This case calls upon this Court to vacate

judgment because there is no basis in fact for asserting a national interest in

bringing Mr. Raley into the care, custody, and control of the national

13

government, no national interest in preempting local interests in this local crime. The jurisdictional peg does not exist in this matter. The case only clutters the limited space we have for national interests.

## CONCLUSION

For the foregoing reasons, this Court should vacate judgment and remand for further proceedings.

## REQUEST FOR ORAL ARGUMENT

The appellant requests that this Court consider oral arguments in this case because oral argument will significantly aid this Court in evaluating the merits of this appeal. Specifically, the errors were not the types that are easily or fully understood from a review of the transcript.

## CERTIFICATE OF COMPLAINCE

The undersigned certifies that:

1. This brief has been prepared using fourteen-point, proportionally spaced, serif typeface, using Word 2007.

2. Exclusive of the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, any addendum containing statutes, rules, or regulations, this certificate of compliance, and the certificate of service, the brief contains 2,867 words.

14

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so requests, I will provide an electronic version of the brief.

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served upon the United States by mailing this day first class to Amy E. Ray, Assistant U.S. Attorney, 100 Otis Street, Room 233, Asheville, NC 28801.

This the 12th day of June, 2013.

/s Aaron E. Michel
Aaron E. Michel, bar no. 17177
Attorney for Appellant
3736 Surry Ridge Court
Charlotte, NC 28210-6921
704-451-8351
mail@aaronmichel.com
fax: 704-643-1004

15